Argued November 17, 1920, modified February 1, 1921.

## GUTHRIE v. J. K. LUMBER CO.

(195 Pac. 173.)

**Appeal and Error—Finding Supported by Evidence Conclusive.**

1. In reviewing an action at law, the findings of the trial court are conclusive as to facts, where there is any evidence to sustain them.

**Appeal and Error—Failure to Separate Repair Items on Engines Covered by Separate Bond Held not Prejudicial.**

2. In action on surety bonds for the faithful performance of a lease of two locomotives, where there were separate bonds for each locomotive, an objection that the testimony as to cost of repairing is not separated, but shows only a gross sum, is one of form, and not substance; and, where not affecting the total amount of the judgment, is not prejudicial.

**Accord and Satisfaction—Evidence Inadmissible to Show an Accord and Satisfaction Which was not Pleaded.**

3. In an action to recover on two surety bonds given for the faithful performance of a lease of two locomotives, a conversation between plaintiff, receiver of lessor, and the defendants as to the disposition of certain repair materials was admissible as showing the value of work and materials necessary to complete the repairs due to lessee's breach, but inadmissible to show an accord and satisfaction which was not pleaded.

**Appeal and Error—Trial—Answer cannot be Treated as Amended so as to Bring in New Defense After Trial.**

4. Finding should be responsive to issues pleaded, and not simply relative to detached facts neither directly nor indirectly involved in the determination of such issues, and an answer cannot be treated as amended so as to bring in a new defense after trial.

**Accord and Satisfaction—Evidence Held Insufficient to Establish.**

5. Evidence *held* insufficient to establish accord and satisfaction.

From Multnomah: ROBERT TUCKER, Judge.

Department 2.

This is an action to recover upon two surety bonds given by the defendants to secure the faithful performance of a lease, whereby H. E. Collins as receiver for the Washington Northern Railroad Company leased two locomotives to the J. K. Lumber Company, a corporation, Frederick A. Kribs, and Willard N. Jones. Collins, the original receiver and plaintiff, died pending the trial of the case, and Guthrie was appointed in his stead, and duly substituted as plaintiff.

That part of the lease material here is as follows:

"First party hereby rents to second parties two Heisler locomotives known as the 'Two Spot' and the 'Three Spot,' said locomotives being a part of the logging railroad equipment of said Washington Northern Railroad Company, now in the custody of the first party as receiver thereof, for the logging season of 1916, at a rental of $7.50 per day for each locomotive, including Sundays and holidays, payable at the end of each calendar month. Rental on one of said locomotives to begin May 1, 1916, and on the other May 15, 1916. It is understood and agreed that if default shall be made at any time hereunder in the payment of rental for a longer period than 20 days, said locomotives are subject to call at once, and such default will be considered as a waiver of the right to the 60 days' written notice.

"Lessor may terminate this lease at any time on sixty days' written notice to lessees. Said locomotives are now, and for some time past have been, in possession of lessees under a prior lease, and are hereby agreed by all parties to be in good condition. At the termination of this lease, no matter how the same may be terminated, the second parties shall redeliver said locomotives to the first party at the logging railroad of the Washington Northern Railroad Company at Prindle, Washington, in as good condition, reason-

able wear and tear excepted, as said locomotives are in at present, and in condition satisfactory to first party.

"The said second parties have heretofore expended some money for repair parts, labor, etc., on these two locomotives, and it will probably be necessary that additional repairs be made thereon. It is understood and agreed that all such indebtedness and expenses as have been incurred or may be incurred by said second parties with respect to said repair work shall be borne by said second parties and that first party or his assigns shall never be called upon to stand any part thereof. It is also agreed that said second parties shall keep said locomotives in good repair. Parties of the second part agree to stand all expense incident to the return of said locomotives to the place of delivery at the end of this lease, one item of which expense may be the cost of replacement of a switch on the tracks of the S. P. & S. Railway Company at Blazier Spur."

The lease bears date of May 1, 1916, and to secure its performance the defendants executed two bonds in the sum of $5,000, being a separate bond with reference to each locomotive. With the exception of the description of the locomotive the bonds are identical.

The material portions of the undertaking in respect to the "two spot" locomotive, omitting merely formal matters, are as follows:

"The condition of this obligation is such that:

"Whereas, the said H. E. Collins has rented to the said J. K. Lumber Company, Frederick A. Kribs and Willard N. Jones, two (2) Heisler Locomotives, Nos.—— belonging to the logging equipment of the said Washington Northern Railroad Company, known as the 'Two Spot,' at an agreed rental by a lease in writing dated as of May 1, 1916, under the terms of which said J. K. Lumber Company, Frederick A. Kribs and Willard N. Jones have agreed and are bound to return said locomotives unto said H. E.

Collins at the termination of said lease in as good condition, reasonable wear and tear excepted, as the same were in at the commencement of the said lease, namely, on May 1, 1916, it being agreed by the parties to said lease that said locomotives were then in good condition.

"Now, therefore, if the said J. K. Lumber Company, Frederick A. Kribs and Willard N. Jones, shall at the termination of said lease redeliver said locomotives at their own expense unto the said H. E. Collins and his assigns, in condition satisfactory to H. E. Collins and his assigns, in accordance with the terms of said lease, then and in that event this bond shall be void, otherwise, the same to be and remain in full force and effect, it being further understood and agreed:

"1st. That the above named surety shall have the right to terminate its liability hereunder by serving written notice of its election so to do upon the obligee, and thereupon the said surety shall be discharged from any liability hereunder for any default of the said principals occurring after the expiration of sixty (60) days from and after the service of such notice.

"2d. That no suit, action or proceeding of this obligation, upon or by reason of any default of the principles, shall be brought or instituted against the surety unless brought within twelve (12) months after the first day of December, A. D. 1916."

It is alleged in the complaint and admitted in the answer that the logging season of 1916 expired April 1, 1917. The locomotives were not returned to the receiver until February, 1918, but remained in defendant J. K. Lumber Company's camp until that month. The time within which action might be brought upon the surety bonds was extended by consent of the parties, from time to time, so that there is no contention that this action was not seasonably brought.

The complaint here outlines two causes of action, being a separate count upon each bond. The breaches alleged are: (1) Failure to return the locomotives on

99 Or.—11

April 1, 1917, or at all; (2) failure to return them in good condition, reasonable wear and tear excepted, or in any other way satisfactory to plaintiff, or at all, but, on the contrary, permitting them to deteriorate by failure to repair or maintain them, whereby they were not, at the institution of the action, in a condition for delivery as promised in the lease, and were not satisfactory to plaintiff. The plaintiff alleges that by reason of the defendants' failure to repair said locomotives he will be compelled to expend the sum of $1,330.01 on each of them for repair; and that each has a rental value of $10 per day, whereby, due to defendants' failure to return the engines as agreed, plaintiff has been damaged in the sum of $3,650 on each cause of action. The prayer is for damages in the sum of $4,980 on each cause of action.

The answer denies the allegations in reference to failure to comply with the terms of the lease; denies that it would be necessary for plaintiff to expend anything to put the locomotives in repair; denies the allegations as to the rental value of the locomotives, and generally puts in issue all of the allegations of the complaint except those of a formal character and those setting forth the terms of the lease and the surety bonds, except as thereafter stated in the answer. These paragraphs which constitute the real defense pleaded are as follows; the quotation being from the answer to plaintiff's first cause of action:

"That in the month of December, 1916, and after defendant J. K. Lumber Company had finished the use of said locomotive for the season of 1916, and had no further use for said locomotive under the terms of said lease, said J. K. Lumber Company offered to return to plaintiff said locomotive, and that at said time the said locomotive was in better condition, reasonable wear and tear excepted, than the same was in at the

commencement of the lease thereof, namely, May 1, 1916; that said plaintiff requested the said J. K. Lumber Company to store the said locomotive in the roundhouse by said J. K. Lumber Company on its premises until the said plaintiff should desire to take possession of the same, and that at said time it was thought by the parties that said locomotive might be used by said J. K. Lumber Company or by other parties who should desire to do logging upon the land of the J. K. Lumber Company during the season of 1917. That as a matter of fact neither the said J. K. Lumber Company nor any other corporation or person had any use upon the premises for said locomotive during the season of 1917, and the same was not at any time used by said J. K. Lumber Company or anyone under its authority or direction upon said premises or at all during the season of 1917.

"That during said season of 1917 the plaintiff made the untenable claim that the said locomotive engine was not in as good condition, reasonable wear and tear excepted, as it was in at the commencement of said lease, to wit, May 1, 1916, and said J. K. Lumber Company, although under no obligation so to do, had work done and materials placed upon said locomotive; that said locomotive was in fact in poor condition when delivered to said J. K. Lumber Company under said lease; and that it was in December, 1916, when said J. K. Lumber Company offered to return it to plaintiff, and ever since has been in far better condition' in every respect than when it was originally delivered to said J. K. Lumber Company, and that since the commencement of said lease on May 1, 1916, the said J. K. Lumber Company has expended upon the said engine in the way of materials and labor the sum of over $1,500.

"That the said J. K. Lumber Company has at all times since December, 1916, been ready, able, and willing to restore said locomotive engine to said plaintiff in accordance with the terms of said contract, and has repeatedly offered to restore said locomotive to it, but that plaintiff has repeatedly refused to accept said

locomotive on the ground that the same was not in as good condition, reasonable wear and tear excepted, as it was in at the time it was delivered under said lease; that any loss sustained by plaintiff through not leasing said locomotive engine to other persons has been the result of its own willful refusal to accept said locomotive."

The answer to the second cause of action is the same, *mutatis mutandis.*

The new matter was put in issue by a reply. The cause came on for trial, and, a jury being waived, was tried by the court, which made findings of fact and conclusions of law, and rendered a judgment in favor of plaintiff for $1,100 on the first cause of action, $1,000 on the second cause, and for costs and disbursements. Omitting the first three findings, which are merely formal and upon facts admitted in the pleadings, the material findings are as follows:

"That the defendants, J. K. Lumber Company, Frederick A. Kribs, and Willard N. Jones returned the locomotive described as 'Two Spot' to the said H. E. Collins, Receiver, on the 12th day of February, 1918, and returned the locomotive described as 'Three Spot' on the 26th day of February, 1918, but the said locomotives prior to the said dates remained in the physical possession of the defendants J. K. Lumber Company, Frederick A. Kribs, and Willard N. Jones. That after the end of the logging season of 1916 said locomotives were permitted to remain with defendants, but that no rental was to be paid therefor until arrangements could be made with parties expected to take up the logging operations in 1917.

"That when the said locomotives were so returned by the said defendants to H. E. Collins, Receiver, they were not in a condition satisfactory to the said H. E. Collins, and they were not in as good condition, wear and tear excepted, as when they had been delivered to the said defendants; nor were the said locomotives in as good condition as they were at the inception of the said lease; nor were said locomotives in

a condition fit for service; that in order to put the said locomotives in good condition and fit them for service it was necessary for the said H. E. Collins to expend, and he did expend, the sum of $1,100 on the locomotive known as 'Two Spot' and the sum of $1,000 on the locomotive known as 'Three Spot.' That said sums were expended for labor and materials, and the said labor and materials were necessary to the repair of said locomotives.''

The conclusions of law were:

''That plaintiff is entitled to a judgment against defendants on its first cause of action in the sum of $1,100, and on its second cause of action $1,000; that plaintiff is also entitled to judgment against the defendants for its costs and disbursements.

''That the plaintiff is not entitled to judgment against the defendants for damages as the rental of the locomotives, for the failure of the defendants, or any of them, to return the locomotives referred to in the complaint and in these findings prior to February 12 and February 26, 1918.''

The plaintiff seasonably moved to strike out the second conclusion of law and insert a finding and conclusion to the effect that plaintiff was entitled to rental at the rate of $10 per day for every day intervening between April 1, 1917, and February 12, 1918, by reason of the failure of the defendants to return said locomotive; and for a like finding and conclusion in respect to the locomotive known as the ''Three Spot,'' for every day intervening between April 1, 1917, and February 26, 1918, these being the respective dates upon which the engines were actually delivered at Blazier Spur. This motion was denied by the court, and its refusal to make this amendment constitutes the principal ground of plaintiff's appeal here.

The defendants submitted findings substantially in accord with the matters set forth in their further

answer, and asked their substitution for the findings made by the court, which was denied. They also requested but were denied the following findings:

"That there is no competent evidence to show the amount of damages sustained by said Collins as such receiver on account of repairs done upon said locomotive described in the first cause of action.

"That there is no competent evidence to show the amount of damages sustained by said Collins as such receiver on account of repairs done upon said locomotive described in the second cause of action.

"That some time in January or February, 1918, said Collins, as such receiver, and the defendants herein, agreed that said defendants were to return to said Collins as such receiver certain brasses, which had been theretofore shipped back to Portland from Hamilton Creek; and were in addition to pay one half of the cost of placing said brasses upon said engines, and the said total cost should not exceed the sum of $200.

"That said brasses were by said defendants returned to said Collins as so agreed, but that said defendants have not paid said sum of $200, for the reason that said Collins never furnished said defendants with a statement of the cost of putting on said brasses, or made any demand upon said defendants for any sum of money on account of putting on said brasses."

Both parties appeal; the plaintiff from the refusal of the court to find in favor of plaintiff for the rental value of the locomotives from April 1, 1917, to February, 1918; and the defendants, from the decision of the court finding in favor of plaintiff and against defendants and particularly because of its refusal to find in favor of defendants upon the alleged accord and satisfaction set forth in the findings tendered and last above quoted.                    Modified.

For appellant there was a brief over the names of *Messrs. McCamant, Bronaugh & Thompson,* with an oral argument by *Mr. Wallace McCamant.*

For cross-appellant there was a brief and an oral argument by *Mr. Guy C. H. Corliss.*

McBRIDE, J.—1. Were this case a suit in equity, we should be privileged to weigh the conflicting testimony. But as it is an action at law, we must treat the findings of the court as conclusive of every fact found, where there is any evidence to sustain them. Without encumbering this opinion with detail, we will say that there is evidence tending to show that the locomotives, up to a short time before they were delivered at the place designated in the lease, remained on defendant's premises at Hamilton Creek, with the actual or implied consent of the receiver, and that he did not expect to receive any rent upon them for that period, so that we have no authority to disturb the finding of the court on that subject. There is also evidence abundantly tending to show that when they were finally delivered to the receiver in February, 1918, the locomotives were not in so good a condition as when they were received by the defendants, reasonable wear and tear excepted, and that it cost the plaintiff $2,100 to put them into such condition, so that we are precluded from disturbing that finding. The question as to the distribution of this expense between the two locomotives will be treated later when we come to consider defendant's appeal.

2. It would seem necessarily to follow from this finding that plaintiff should be compensated for the delay occasioned by the fact that the locomotives were not usable or rentable during this period. The plain-

tiff claims that the evidence shows that if the locomotives had been in the condition called for in the contract, they could have been rented for $10 each per day, and that this should constitute the measure of his recovery for failure to return them in good repair.

As to defendants' appeal, so far as it applied to discussion of matters of fact, we will say that each of the findings has some evidence to support it. The objection that the testimony as to the cost of repairing the two locomotives is not separated, but shows only the gross amount, is one of form and not of substance. There was one contract including both locomotives, the performance of which contract was secured by two contemporaneous bonds, each guaranteeing the performance of the contract as to a particular locomotive. Technically, perhaps, as to the surety this gave rise to a separate cause of action upon each bond, although there was but one cause of action against the lumber company for violation of the terms of the lease. It appears from the testimony that the locomotives were repaired as a single job, work being done alternately upon each as convenience dictated, and that no accurate account was kept as to the individual cost of repairing each locomotive. Holbrook, a witness for plaintiff, was disposed to fix the relative cost at about the same on each locomotive, while Hayes, who was in a position to testify with greater accuracy, estimated the cost to be approximately $500 greater on the "three spot" locomotive than on the "two spot." This testimony, while only an approximation, was competent, and the finding, while strictly in accord with the evidence so far as it related to the aggregate expense of the repair of both locomotives, would have been perhaps more nearly accurate technically if it had made the segregation in accordance with

Hayes' testimony.   But if this had been done, it would
have availed the defendants nothing. They would
still be liable to plaintiff in exactly the same amount
as before such segregation. The objection is based
upon an unprofitable technicality.

3. In the course of defendants' testimony it
appeared that there had been a conversation between
Collins and the defendants, in which the latter claimed
that Collins agreed that certain locomotive brasses
that had been sent to Zimmerman-Wells-Brown Com-
pany should be returned to Blazier Spur; that Collins
was to put them on and make certain repairs, and
that he was to pay one half of whatever the amount
would be, and defendants the other half. Mr. Jones,
one of the defendants, stated the alleged agreement
as follows:

"I did not take very much part in the conversa-
tion, but it was settled, as I had supposed, that some
brasses that had been sent down from Hamilton
Creek to Zimmerman-Wells-Brown should be returned
to Blazier Spur, where the engines were then located,
and that Mr. Collins was to make, to put them on and
make certain repairs, and Mr. Collins was to stand
one half of whatever that amount was to be, and that
was fixed as something like one hundred twenty-five
or two hundred dollars I forget exactly the amount.

"Q. But that is the substance of the conversation,
as you remember?

"A. That was the substance of the conversation.

"Q. Did you hear any claim made at that time by
Mr. Collins that you people were liable for any rent
for these locomotives or damages because you had been
delayed in delivering them, or anything of that kind?

"A. I did not.

"Q. Was that subject brought up?

"A. I don't think so.   I didn't hear it."

Another witness for defendants, Mr. Galloway, re-
lates the conversation as follows:

"Q. Now, give the substance of the conversation that took place there, in the presence of Mr. Collins, of course.

"A. First, talking about the condition of the locomotives as they were at that time, and what was necessary to put them in shape satisfactory to Mr. Collins to take them back, to receive them, and it seems that Wall had been up there, and Collins, I believe, too, had been up in the country where the locomotives were, and that there were certain brasses which it was thought, which Mr. Kribs and Mr. Jones thought, were in proper shape, the old ones, that Mr. Collins and Mr. Wall said would have to be replaced, and these brasses in question had been originally included in the shipment of parts that Mr. Kribs and Mr. Jones had had sent up there, and the workman, the man who was doing the work, had inspected the old brasses on the locomotives, and had made the report that they were all right and sound, and would not need to be replaced, and had returned certain brasses as unnecessary. And Mr. Wall, I believe, particularly said that they would have to be used, would have to be replaced, and during the conversation the question was asked about how much it would cost to replace those brasses, and workmanship, labor, and the result of it was—I forget exactly how it was led up to, but the result of it was that Collins suggested that if they would return the brasses he would have one of his men put them on, and would stand 50 per cent of the expense of putting them back on."

The testimony of Mr. Kribs is to the same effect.

It is claimed that this testimony shows an accord and satisfaction for any claims for repairing the locomotives beyond one half of the cost of putting on the brasses, which was estimated at approximately $200; and the court was asked by defendants to find to this effect; error being predicated on its refusal to do so. There was no plea of accord or of accord and satisfaction, and letters of Collins indicate that the proposed

agreement was incomplete, and not considered by him as final.   The record does not disclose that any attempt was made to amend the pleadings to show accord and satisfaction, which was an entirely new defense, different from any urged in the answer.   Collins was alive when the original answer was filed, and this defense, which it would seem, if true, would have been the very first one to suggest itself to defendants, was not pleaded or suggested during his lifetime; nor was there any intimation when the testimony was offered that it was being introduced for the purpose of showing an accord and satisfaction.

As it was not made an issue in the case, the testimony was inadmissible for the purpose of showing an accord, although it was admissible for the purpose of showing the value of the work and materials necessary to complete the repairs.   Had the defendants asked leave to amend, the court would have been entirely justified in refusing to permit such amendment under the circumstances, and especially in view of the fact that the contention was not advanced during Collins' lifetime, but seems to have been an afterthought.

4. The findings should be responsive to the issues made in the pleadings, and not simply relative to detached facts which are neither directly nor indirectly involved in the determination of such issues.   To treat the answer as amended, so as to introduce accord and satisfaction as a defense, would be to allow the defendant to bring in a new defense after trial, and thus do indirectly what the statutes prohibit doing directly.

5. Moreover, the proof of the alleged agreement is vague and totally at variance with the course that Collins was pursuing as indicated in his letters.   His letter of March 14th discloses that a question of defendants' furnishing certain brasses and Collins' pay-

ment of the expense of putting them on had been under discussion, but also that Collins had not waived the matter of having complete repairs made in accordance with his view of the contract, or agreed finally to accept defendants' proposal as an accord and satisfaction of his demands. Even had accord and satisfaction been pleaded, the evidence fails to establish it as a fact. In short, such a defense has neither been pleaded nor proved.

The judgment here will be that the plaintiff recover of defendants the sum of $3,760, being the $2,100 found by the Circuit Court and $1,660 damages for the delay occasioned by plaintiff's loss of the use or rental of the locomotives while the same were being repaired, and the costs of this action in both courts. The cause will be remanded to the Circuit Court with directions to enter judgment accordingly.

MODIFIED.

BEAN, BROWN and JOHNS, JJ., concur.